2001 OK CIV APP 129

**Ronald M. WALLACE,**
**Plaintiff/Appellant,**

v.

**MENTAL HEALTH SERVICES OF**
**SOUTHERN OKLAHOMA, INC.,**
**Defendant/Appellee.**

No. 95,499.

Court of Civil Appeals of Oklahoma,
Division No. 3.

Sept. 21, 2001.

Jack S. Dawson, Tsinena Bruno, Oklahoma City, OK, for Plaintiff/Appellant.

Robert E. Manchester, Jenny L. Evans, Oklahoma City, OK, for Defendant/Appellee.

OPINION

GARRETT, Judge:

¶ 1 Plaintiff/Appellant, Ronald M. Wallace, sued Defendant/Appellee, mental Health Services of Southern Oklahoma, Inc., alleging that he had been wrongfully terminated from his employment with Appellee.[1] Wallace based his action upon a claim that Appellee breached his alleged employment contract. The trial court sustained Appellee's Motion for Summary Judgment and entered judgment accordingly. Wallace appeals.

¶ 2 Wallace alleged he had been terminated "willfully, with malice and in reckless disregard of Wallace's rights under state law." He alleged he had an employment contract with Appellee as a result of Appellee's employment handbook. He claimed he was required to read, review and sign the handbook at the conclusion of his probationary period when he became a permanent employee. He contends the handbook contained procedures for terminating an employee that Appellee did not follow. Therefore, he alleged, the contract was breached.

¶ 3 Appellee alleged: (A) Wallace resigned "pursuant to a mutual agreement between the parties"; (B) he was not willfully or maliciously terminated; and, (C) there was no employment contract. Appellee moved for summary judgment. Appellee contended Wallace had used "questionable billing practices" and was given the option of resigning or facing dismissal; and, he chose the option of resigning. Appellee contended the handbook signed by Wallace only contained gen-

---

1. Previously, Wallace sued Appellee in Federal Court. In that action Wallace alleged he was constructively discharged as a result of (1) racial discrimination, and (2) by virtue of a breach of contract. The Federal Court entered summary judgment against Wallace on the civil rights claim, and dismissed his breach of contract claim for lack of subject matter jurisdiction.

eral provisions regarding employment, and it did not mention a duration of employment. Any promises or obligations were, at most, based on vague or indefinite statements. Appellee contended, since there was no employment contract, a breach of contract could not exist. It attached evidentiary materials to the motion, including the handbook.

¶ 4 Wallace responded and claimed he was constructively discharged and forced to resign. He relied on the handbook and claimed Appellee did not follow the procedure established therein. The handbook lists the possible steps for corrective discipline: (1) informal discussion; (2) corrective interview; (3) oral reprimand; (4) letter of reprimand; (5) letter of suspension/investigation; (6) demotion; and, (7) dismissal. Wallace claims the handbook does not specifically provide he was to be considered an "at-will" employee.

■ ¶ 5 With exceptions not material here[2], absent an employment contract, Oklahoma is an "at-will" employment state. In *Gilmore v. Enogex, Inc.*, 1994 OK 76, 878 P.2d 360, the Court said:

> Employers can discharge at—will employees without recourse, in good or bad faith, with or without cause. There is no implied covenant of good faith and fair dealing that protects an at—will employment relationship from termination. At—will employees do not have a cognizable cause of action for wrongful discharge unless the claim falls within the narrow class of complaints in which the discharge is contrary to a clear mandate of public policy articulated by constitutional, statutory or decisional law. (Citations omitted.)

■ ¶ 6 In *Russell v. Board of County Com'rs, Carter County*, 1997 OK 80, 952 P.2d 492, 501, the Court held that an at-will employment could be altered by the existence of a employment contract between the parties. A handbook, or manual may possibly form the basis of a contract under limited circumstances. The *Russell* Court said:

Oklahoma jurisprudence recognizes that an employee handbook may form the basis of an implied contract between an employer and its employees if four traditional contract requirements exist: (1) competent parties, (2) consent, (3) a legal object and (4) consideration. Two limitations on the scope of implied contracts via an employee handbook stand identified by extant caselaw: (1) the manual only alters the at—will relationship with respect to accrued benefits and (2) the promises in the employee manual must be in definite terms, not in the form of vague assurances. Although the existence of an implied contract generally presents an issue of fact, *if the alleged promises are nothing more than vague assurances the issue can be decided as a matter of law.* This is so because in order to create an implied contract the promises must be definite. (Citations omitted. Emphasis added.)

■ ¶ 7 Here, the handbook contains, in general terms, the development, apparently in the future, of procedures by which disciplinary procedures may be initiated. There is no definite assurance or requirement that the mentioned disciplinary steps must be followed. Here, Appellee contended its funding from Federal sources was in jeopardy if even one violation of standard billing practices were found. For that reason, Appellee contends, it gave him the option of resignation or disciplinary action, and he chose resignation.[3]

¶ 8 Wallace did not show the existence of an employment contract, which is necessary to overcome the "at will" doctrine. Since no material fact was disputed, and Appellee was entitled to judgment as a matter of law, the summary judgment was proper.

¶ 9 AFFIRMED.

¶ 10 HANSEN, C.J., and BUETTNER, P.J., concur.

---

2. Public policy reasons may be an exception to the at-will doctrine.

3. Because we find there is no employment contract, we need not discuss the issue of voluntary or involuntary dismissal.